STATE HIGHWAY COMMISSION v. LULIA E. HAMILTON; DONALD E. HAMILTON AND WIFE, BARBARA R. HAMILTON; ANDRA H. POND AND HUSBAND, EUGENE POND

No. 6914SC346

(Filed 23 July 1969)

1. Evidence § 48— expert testimony — remarks of trial court to jury
     Remarks of trial court to the jury relating to the nature and purpose of expert testimony, which remarks were made prior to testimony of an expert in the field of real estate appraisal, *are held* without error.

2. Evidence § 49;   Eminent Domain § 6— expert evidence of value — hearsay
     In highway condemnation proceeding, trial court did not err in refusing to permit real estate expert to testify as to what third party had told him concerning the sale price of a particular piece of real estate.

**3. Eminent Domain § 5— determination of compensation — evidence — change in zoning ordinance**

In highway condemnation proceeding, trial court properly allowed the introduction of evidence which tended to show the reasonable probability of a change in a zoning ordinance from residential to industrial use, and properly denied the introduction of evidence which showed changes in the ordinance subsequent to the date of taking.

**4. Trial § 10; Appeal and Error § 51— remarks of trial court — counsel**

Trial court's remarks, which followed an exchange between counsel and which contained the phrase "will-o'-the-wisp," *held* not prejudicial to appellants, especially where the remarks were inaudible to the court reporter and, presumably, to the jury.

**5. Eminent Domain § 6— evidence of value — necessity for voir dire**

In highway condemnation proceeding, failure of trial court to conduct *voir dire* examination of expert witnesses and thereafter make specific rulings pertaining to comparable values of other pieces of real estate was not error.

APPEAL by defendants from *Ragsdale, S.J.*, 6 January 1969 Civil Session, DURHAM County Superior Court.

This was a condemnation proceeding wherein Lulia E. Hamilton, Donald E. Hamilton and wife, Barbara R. Hamilton, Andra H. Pond and husband, Eugene Pond, (defendants) sought to recover damages for the taking by the State Highway Commission (plaintiff) of a portion of a tract of land owned by them in the City of Durham, Durham County. The portion in question was taken for highway purposes. The entire tract of land owned by the defendants was not taken.

The following issue was submitted to the jury:

"What sum, if any, are the defendants entitled to recover of the plaintiff, State Highway Commission, as just compensation for the taking of a portion of defendants' land for highway purposes?

ANSWER: Yes. $24,000."

The trial judge thereupon entered a judgment that the defendants recover $24,132.75, which is the total of the jury verdict plus interest. The defendants excepted and appealed to this Court. The facts and the questions presented for review are set out in the opinion.

*Attorney General Robert Morgan, Deputy Attorney General Harrison Lewis, Trial Attorney J. Bruce Morton and Assistant Attorney General Andrew McDaniel for plaintiff appellee.*

*Blackwell M. Brogden for defendant appellants.*

CAMPBELL, J.

The parties stipulated that the date of taking was 29 April 1968. Seven rental houses were located on the tract of land, four of which were taken by the plaintiff and three of which were left intact. The tract was bounded on the west by Plum Street, on the east by Bernice Street and on the south by Bowen Street. The former was an eighteen-foot wide gravel street, while the latter two were fifteen-foot wide gravel streets. The W. L. Robinson Tobacco Company was located on Plum Street across from the tract. On 29 April 1968 the property in question was zoned R-3 which was a residential classification.

The witnesses for the defendants testified that the highest and best use for the property was industrial, not residential. They introduced testimony to the effect that, at the time of taking, a change in the zoning ordinance was being considered and that the change would make the property available for industrial use rather than being restricted to residential use.

[1] The defendants' first assignment of error relates to "the handling of testimony of expert witnesses" in the trial. They offered the testimony of David H. Scanlon, a witness with many years of experience in the real estate business and in appraising property. After bringing out his qualifications, the defendants tendered him as an expert in the field of real estate appraisal. The trial judge then stated:

"Without objection you are found by the Court to be an expert witness in the field of real estate appraisal. Members of the jury, let me explain what all of this means if I can. Ordinarily witnesses are not permitted to give their opinion about matters. Witnesses generally testify to facts, and the jury customarily finds facts, and the witness is not ordinarily allowed to give his opinion because it is said that invades the province of a jury, but in certain cases, particularly in cases where value is involved, certain persons upon the presentation of proper credentials may be found by the court to be persons who are qualified to express an opinion about it. The expression of the opinion is for the purpose of permitting the jury to have that opinion, and

that opinion is for the jury's consideration. The jury is not bound by the opinion, and you are not to be bound by anything which may be expressed or which may not be expressed in this case, but I wanted to explain to you just what went on in front of you. All right, you may proceed."

The defendants excepted and assigned this remark by the trial judge as an error in the handling of expert testimony. There is no merit in this exception.

[2]  Another example of what the defendants are complaining of as error in "the handling of testimony of expert witnesses" is illustrated by the testimony of Howard Gamble, a witness for the defendants. He testified as to his experience in the real estate business over a period of nearly thirty years including experience in appraisal work. On cross-examination he expressed his opinion that a particular sale of real estate did not represent the fair market value. He then attempted to state that he had discussed the sale with another party and to relate what that party had told him. At this point an objection was entered as to what the other party had said and the trial court sustained the objection. The following then occurred:

"THE COURT:  Sustained as to what someone else told you. You have heard of the old hearsay business. You can't say what anybody else has told you.

MR. BROGDEN:  I think he might can. He is qualified as an expert, and an expert can testify. One of the exceptions to the hearsay rule — opinion evidence like character evidence — it is what others think — it is one of the exceptions — an opinion by experts is one of the exceptions to the hearsay rule.

THE COURT:  He can give his opinion.

MR. MORTON:  He has given his opinion.

THE COURT:  But he can't tell what somebody else told him. That is hearsay.

MR. BROGDEN:  Opinions are based on what he gained as an expert. . . ."

The error assigned pertains to the action of the trial judge in sustaining the objection to the witness testifying as to what another person had told him. There is no merit in this exception.

". . . It is probably still the law that statements *by a third person* may not be considered by the expert as a basis for his opinion, and that the opinion of one expert based upon that of

another is incompetent." Stansbury, N.C. Evidence 2d, § 136,. p. 328.

We have reviewed the other exceptions included within this assignment of error and pertaining to "the handling of testimony of expert witnesses" by the trial judge, and we can find no merit in these exceptions. Since nothing would be gained by discussing these numerous exceptions one by one, we will refrain from doing so.. Suffice it to say that the evidence of the expert real estate witnesses was handled in keeping with the views expressed in *Highway Commission v. Conrad*, 263 N.C. 394, 139 S.E. 2d 553.

This assignment of error is without merit.

[3]   The defendants' second assignment of error is that the trial judge erred in excluding testimony to the effect that there was a reasonable probability of the property in question being rezoned from residential to industrial use. The defendants attempted to show that, subsequent to the date of taking, the governing authorities of the City of Durham had approved a change in the zoning law and had rezoned this property from residential to industrial use. The trial judge sustained objections to the introduction of evidence as to the actual changes which had occurred in the zoning ordinances subsequent to 29 April 1968. The defendants assigned this as error. The record shows, however, that the trial judge permitted the defendants to introduce evidence pertaining to all steps which had been taken by the governing authorities and the Planning and Zoning Commission pertaining to a change in the zoning of this property which had taken place prior to the actual date of taking. The only thing that the trial judge prohibited was testimony of changes which had occurred subsequent to this date of taking.

In instructing the jury, the trial judge discussed the contemplated zoning changes as follows:

"Now, members of the jury, something has been said in this case about zoning ordinance. Our Supreme Court has said in a famous case that if· the land taken is not presently available for a particular use by reason of a zoning ordinance, or other restriction imposed by law, but the evidence tends to show a reasonable probability, and that is another phrase of art, you have got to understand that, but if the evidence tends to show a reasonable probability of a change in the near future in the zoning ordinance, or other restrictions, then the effect of that probability upon the minds of purchasers generally may be taken into consideration in fixing the market value; however,

if the possible change in a zoning ordinance restricting use of the property condemned is purely speculative, such possibility is not to be considered in ascertaining market value in an eminent domain proceeding. The reasonable probability of a rezoning of the condemned property to permit the highest and best use may be considered in determining market value; but if you find it to be merely a possibility, or one of a speculative nature, you cannot consider it.

So, as I have said, members of the jury, the test is what is the fair market value of the property in the market, or what was the fair market value of the property in the market. The uses and capabilities must be so reasonably probable as to have an effect on the market value and purely imaginative or speculative value should not be considered by you."

We have reviewed the evidence pertaining to the change in the zoning ordinance, and we think the trial judge properly handled such evidence. The defendants were entitled to introduce and were permitted to introduce evidence which tended to show that there was a reasonable probability of a change in the zoning ordinance from residential to industrial use. The trial judge was correct in refusing to permit the defendants to introduce evidence as to what changes occurred subsequent to the date of taking. The question involved was the fair market value of the property on 29 April 1968. Therefore, evidence as to what had occurred subsequent to that date was not relevant or pertinent in fixing value as of such date of taking.

The reasonable probability of a zoning change was handled by the trial judge in conformity with the applicable principles of law contained in *Barnes v. Highway Commission*, 250 N.C. 378, 109 S.E. 2d 219.

This assignment of error is without merit.

[4] The defendants' third assignment of error pertains to "injudicious remarks about counsel for the defendants" made by the trial judge. It is directed to the following incident:

"MR. PAUL W. BROOKS, after being duly sworn, testified as follows:

(Mr. Brogden and Mr. Morton exchanged remarks which were audible but not intelligible to the Court Reporter.)

THE COURT: Mr. Brogden, do you think you can contain yourself?

MR. BROGDEN: Yes sir.

THE COURT: All right, sir, try hard to — will o the wisp — (hardly audible to Reporter). You may proceed, sir.

. DIRECT EXAMINATION."

The defendants assert that this verbal exchange indicated that the trial judge was making remarks which reflected upon the defendants' attorney and which thereby tended to prejudice the jury against them. From the record we have sincere misgivings as to whether the jury even heard the exchange either between counsel or between the court and counsel. The record indicates that even the court reporter had difficulty in hearing the words which were uttered. Even if the jury heard the words, we do not see where anything prejudicial to the defendants occurred. The expression "will-o'-the-wisp" does not appear to have been directed by the court to Mr. Brogden, the defendants' attorney. The phrase "will-o'-the-wisp" is defined in Webster's Third New International Dictionary (1968) as "IGNIS FATUUS" and as "a delusive goal" (such as "followed the *will-o'-the-wisp* of universal disarmament — G. F. Eliot"). "Ignis fatuus" is defined as being "a light that sometimes appears in the night usu. over marshy ground and that is often attributable to the combustion of marsh gas — called also *jack-o'-lantern*" and is defined as "a deceptive or false goal: a misleading ideal".

At most the expression "will-o'-the-wisp" would not be applicable to a person, and if it should be so construed, it would certainly indicate something ephemeral. Anyone who has ever seen Mr. Brogden in person with his physical portions would readily know that he could in no way be referred to as ephemeral. We are of the opinion that this episode constituted "much ado about nothing" and was in no way prejudicial to the defendants.

This assignment of error is without merit.

[5] The defendants' fourth assignment of error is that the trial judge did not conduct a *voir dire* examination of the expert witnesses and thereafter make a specific ruling pertaining to comparable values of other pieces of real estate. The defendants assert that it was the obligation of the trial judge to conduct such a *voir dire* examination and thereafter to make a specific ruling. There is, however, no fixed requirement in this regard. In *Barnes v. Highway Commission, supra,* the Supreme Court stated:

"It is within the sound discretion of the trial judge to determine whether there is a sufficient similarity to render the evidence of the sale admissible. It is the better practice for the

judge to hear evidence in the absence of the jury as a basis for determining admissibility. . . ."

In the instant case there was no error in the admission and exclusion by the trial judge of evidence pertaining to sales of property which the expert witnesses referred to as forming the basis of their respective opinions as to value.

This assignment of error is without merit.

The defendants' last assignment of error is that the trial judge erred in his charge to the jury. We have reviewed these various assignments of error and we find no merit in any of them. When the charge is construed as a whole, we find that it correctly and impartially presented the case to the jury.

This assignment of error is without merit.

The trial presented a clear dispute as to the relative value of the entire property in its status before any portion thereof was taken for highway purposes as compared to the value of that ·portion which was left after the taking. The case was fairly and impartially tried in compliance with well-established principles of law, and we find

No error.

BROCK and MORRIS, JJ., concur.